UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONNA TOWNSEL,                                Case No. 2:13-cv-10163

                                                    District Judge Stephen J. Murphy, III
        Plaintiff,                     Magistrate Judge Laurie J. Michelson

v.

CHARMAINE RAUPP, et al.,

        Defendants.[1]

_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANT RAUPP'S MOTION FOR SUMMARY JUDGMENT [9]**

Plaintiff Donna Townsel was formerly incarcerated at the Michigan Department of Corrections' Women's Huron Valley Correctional Facility. While there, a physician provided her with a medical detail for a bottom bunk, but at least one corrections officer, allegedly with knowledge of the detail, assigned her to a top one. In attempting to climb down from her top bunk, Townsel fell and was injured. Townsel has sued numerous individuals who worked at Women's Huron Valley ("WHV"), including corrections officers who allegedly failed to honor her bottom-bunk detail and healthcare staff that allegedly failed to provide her with adequate medical care for

---

[1] Although the docket's case caption suggests otherwise, Townsel has clearly named 12 defendants: (1) "A/ARUS Raupp," (2) "Sgt. Fischer," (3) "Sgt. Witcher," (4) "G. Frodyma - Resident Unit Manager," (5) "Officer Ratliff," (6) "Lt. Mulden," (7) "Lt. Walden," (8) "ARUS Stringer-Hill," (9) "Dr. Lacy," (10) "Nurse Lacy," (11) "Dr. Qin," and (12) Prison Health Services. (Dkt. 1, Compl. at ECF Pg ID 1, 15, 16.) At some point during the initial processing of Townsel's Complaint, it was mistakenly believed that Townsel named only Raupp. Whatever the cause, the result is that the U.S. Marshal has only attempted to serve Raupp. By separate order, the Court will immediately direct service on the other 11 defendants.

the injuries she sustained in her fall. Townsel alleges that Defendants violated the Eighth Amendment's proscription on cruel and unusual punishments, "Michigan Department of Correctional Policies and Operating Procedures," "as well as MCLA 791.206, Promulgation of Rules." (Dkt. 1, Compl. at ECF Pg ID 1.)

Before the Court for a report and recommendation (*see* Dtk. 4), is a motion for summary judgment filed by Defendant Charmaine Raupp May ("Raupp") (Dkt. 9, Def.'s Mot. Summ. J.). Although the Court directed Townsel to file a response to Raupp's motion, Townsel has not responded and the deadline to do so has long passed. (*See* Dkt. 10, Order for Responsive Pleading at 1.) Thus, the motion is unopposed. *See* E.D. Mich. LR 7.1(c)(1) ("A respondent opposing a motion must file a response . . . ."). As detailed below, even when the Court resolves factual disputes in Townsel's favor, Raupp is entitled to judgment in her favor as a matter of law.

**I.**

Where, as here, a defendant moves for summary judgment, this Court "construe[s] the evidence," and "draw[s] all reasonable inferences" from the evidence, in favor of the plaintiff. *See Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012). The following factual summary adheres to this standard.

Before Townsel was imprisoned, she was in a car accident that resulted in nerve damage to her right foot. (Compl. at Pg ID 11.) Apparently because of this injury, on November 29, 2011, a physician at WHV, Dr. Michael Szymanski, provided Townsel with a bottom-bunk detail. (Compl. at Pg ID 3, Ex. A.) That same day, Townsel told Acting/Assistant Resident Unit Supervisor ("A/ARUS") Raupp that she had been issued a bottom-bunk detail, but "Raupp did not honor this

medical detail." (Compl. at Pg ID 3.) By December 9, 2011, however, Townsel was moved to a bottom bunk. (*Id.*)

Things changed on December 17, 2011—the date Townsel fell and was injured. On the morning of December 17, Resident Unit Officer Ratliff told Townsel to pack up and move to a top bunk. (Compl. at Pg ID 3.) Townsel responded that she had a bottom-bunk detail and would not be able to get down from the top bunk, but, ultimately, Townsel moved her belongings to an upper bunk. (Compl. at Pg ID 3, 5.) She then went to work. (*Id.*) At lunch, Townsel spoke with Sergeant Witcher about her bunking situation; Witcher said there was nothing he could do until Monday (which was in two days). (Compl. at Pg ID 5.) In the evening, Townsel spoke with Lieutenant Malden about the bunk issue; Malden said he would speak with Townsel during his evening rounds. (Compl. at Pg ID 5.) After work, Townsel returned to her unit and asked Ratliff what she should do about her bunk problem; Ratliff ordered Townsel to the upper bunk. (*Id.*) When Townsel asked Ratliff to call a sergeant (perhaps Witcher), Ratliff had "a very nasty attitude" with Townsel, and told Townsel that if she had talked to the sergeant, then he would see Townsel. (*Id.*) Townsel waited in a "TV room" but no sergeant came. (*Id.*) So, around 9:00 p.m., Townsel again inquired to the "officers" about her bed situation. (*Id.*) Ratliff told Townsel to get some chairs and get on the top bunk. (*Id.*) Townsel complied; but around 10:00 p.m., as Townsel "attempted to climb down off the top bunk, the chairs flipped from under [Townsel] and [she] fell on [her] back and right shoulder." (*Id.*) Ratliff allegedly made sarcastic remarks (e.g., "Oh! I'm falling and I can't get up") and acted as if Townsel's fall was a joke. (*Id.*)

Nonetheless, Ratliff called WHV healthcare. (Compl. at Pg ID 6.) Townsel was examined, given Tylenol, and cold and warm compresses. (*Id.*) According to Townsel, when she returned to

3

her unit in the early morning of December 18, "I told Officer Ratliff and the rover . . . that I would like to see a sergeant or a lieutenant. I was threatened by both officers that if I did not lock down for count, I would go to segregation. I stayed at the desk until Sergeant Smith came and called shift command which cleared the way for me to have a bottom bunk." (Compl. at Pg ID 6.)

Two days later, on December 20, 2011, Resident Unit Manager Frodyma spoke with Townsel about a grievance Townsel had filed against Raupp. (Compl. at Pg ID 6.) Although the exact timing is not discernable from the record, Townsel had grieved Raupp for not "moving [Townsel] to a bottom bunk when [Townsel] showed her [the] medical detail that had been issued on December 15, 2011." (Compl. at Pg ID 6.)[2] RUM Frodyma explained to Townsel that Raupp had in fact "entered [Townsel's] detail for a bottom bunk in the system on November 30, 2011." (Compl. at Pg ID 6, Ex. C.) Frodyma's grievance response provides that "[a] request for prisoner Townsel to move to a bottom bunk was been [*sic*] placed by A/ARUS Raupp on 11/30/11. The medical detail of prisoner Townsel have been [*sic*] honored, she now locks in a bottom bunk." (Compl., Ex. B.) Townsel says, "I signed off on that grievance. At that time I informed RUM Frodyma that I still had not been moved and she would be getting another grievance on ARUS Stringer-Hill, shift command and whoever was responsible for moving me to a top bunk. RUM Frodyma replied that I should not have been on the top bunk, period!" (Compl. at Pg ID 6-7.)

Later on December 20, 2011, Townsel began having "a hard time breathing." (Compl. at Pg ID 7.) A corrections officer called healthcare. Townsel spoke to a nurse on the phone who said that

---

[2]The subject matter of the December 15, 2011 medical detail is not apparent. The evidence Townsel provides only indicates that bottom-bunk details were ordered on November 29 and December 21, 2011. (Compl., Ex. A.)

4

Townsel had swelling between her ribs due to the fall. (*Id.*) The nurse extended Townsel's lay-in and said that she would order Townsel a wheel-chair for traveling long distances. (*Id.*)

The next day, December 21, 2011, Townsel's work supervisor said that he would only provide a one-day lay-in until Townsel brought proof of her fall. (Compl. at Pg ID 7.) So Townsel went to healthcare where a nurse told her that she should have been scheduled for x-rays, gave Townsel a pain shot, and provided two back braces. (*Id.*) Townsel was given a wheel-chair aid and a lay-in for meals and from work until December 31, 2011. (*Id.*)

On December 22, 2011, Raupp moved Townsel to the lower level of the unit (with a bottom bunk assignment) because of Townsel's no-stairs detail. (Compl. at Pg ID 7.)

Townsel's narrative continues for almost another year. These myriad allegations pertain, primarily, to various healthcare professionals who worked at WHV and allegedly failed to provide Townsel with adequate treatment for the injuries she sustained from her fall. What these remaining allegations do not pertain to, however, is Raupp. As Raupp is the only defendant now moving for summary judgment, the Court need not consider the allegations that pertain to other Defendants.

## II.

Raupp moves for summary judgment on two grounds. She says Townsel has not exhausted her administrative remedies before filing this lawsuit. (Def.'s Mot. Summ. J. at 3-8.) Raupp also asserts that she is entitled to qualified immunity. (*Id.* at 9-12.) Judgment in Raupp's favor is warranted on both grounds. The Court considers Raupp's non-exhaustion defense first.

### A.

The Prisoner Litigation Reform Act requires a prisoner to exhaust "administrative remedies as are available" before filing suit under 42 U.S.C. § 1983 or "any other Federal law." 42 U.S.C.

§ 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). The exhaustion prerequisite applies to all inmate suits about prison life. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Moreover, Townsel must "properly" exhaust her claims by complying with MDOC's grievance policy. *See Woodford v. Ngo*, 548 U.S. 81, 90-91 (2002) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ."); *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted. . . ." (citing *Jones Bey v. Johnson*, 407 F.3d 801, 803 n. 2 (6th Cir. 2005))).

It is not, however, Townsel's burden to plead or prove that she has properly exhausted her administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Rather, non-exhaustion is an affirmative defense, *Jones*, 549 U.S. at 216, and so Raupp has the burden of persuasion on the issue, *Surles*, 678 F.3d at 455-56. And "[i]n cases where the party moving for summary judgment also bears the burden of persuasion at trial, the party's 'initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Surles*, 678 F.3d at 455-56 (quoting *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)); *see also Cockrel*, 270 F.3d at 1056 (explaining that where the moving party on summary judgment has the burden of production and persuasion, the moving party "must . . . surpass[]" "a substantially higher hurdle" than a preponderance of the evidence).

MDOC, via Policy Directive 03.02.130, requires prisoners to complete a three-step grievance process to exhaust their administrative remedies. (Def.'s Mot. Summ. J., Ex. 2, MDOC Policy

6

Directive ("PD") 03.02.130 ¶ B.) Briefly, prisoners not satisfied with a response to their Step I grievance, or who have not received a timely Step I response, may file a Step II grievance. (PD 03.02.130 ¶ BB.) Similarly, "[a] grievant may file a Step III grievance if s/he is dissatisfied with the Step II response or does not receive a timely response." (PD 03.02.130 ¶ FF.) "The Grievance and Appeals Section shall be the respondent for Step III grievances on behalf of the Director. Each grievance received at Step III, including those which may be rejected, shall be logged on a computerized grievance tracking system." (*Id.*)

Raupp has provided an "MDOC Prisoner Step III Grievance Report" generated from this "computerized grievance tracking system" which she implies shows all the Step III grievances Townsel filed with the Grievance and Appeals Section from "May 2009 to Present." (Def.'s Mot., Ex. 3, Step III Grievance Report.) But there is no affidavit authenticating the Report or making explicit that the Report is the result of a proper query against the Step III database. *See Ward v. Luckey*, No. 12-14875, 2013 WL 5595350, at *5 (E.D. Mich. Sept. 5, 2013) (Michelson, M.J.) ("A supporting affidavit does more than authenticate the Database Report: it is critical evidence that the Report includes every one of Ward's Step III grievances received by the Grievance and Appeals Section in Lansing. Thus in some cases, a Database Report, standing alone, will not be evidence of non-exhaustion that 'no reasonable jury would be free to disbelieve.'" (quoting *Surles*, 678 F.3d at 455-56)), *report and recommendation adopted by*, 2013 WL 5595350 (E.D. Mich. Oct. 11, 2013) (Steeh, J.). Townsel, however, does not contest Raupp's implication that the Report shows every one of her Step III grievances received by the Grievance and Appeals Section between May 2009 and the date of the Report, February 5, 2013. Accordingly, the Court believes that, on this record, no reasonable jury would have good reason to second guess Raupp's implication.

So the question becomes whether a reasonable jury could find that some item on the Report indicates that Townsel properly exhausted her administrative remedies for Raupp's alleged misconduct. The Report lists two Step III grievances, WHV-12-04-1447-12d ("WHV 1447") and WHV-12-02-0571-28j ("WHV 0571"), and also has a notation about a "grievance packet." The Court considers these three items in turn. None show that Townsel administratively exhausted her claims against Raupp.

The WHV 1447 grievance does not pertain to Raupp. Instead, Townsel asserted that, although she had fallen on December 17 and had requested to see a doctor, she had not been scheduled with a doctor. (Def.'s Mot., Ex. 3 at Pg ID 72.) Therefore, even if there is some basis to deem the WHV 1447 grievance exhausted (it appears on the Report as "Rejected"),[3] this could not be a basis for finding that Townsel exhausted her claims against Raupp.

The WHV 0571 grievance also does not pertain to Raupp's conduct. In this grievance, Townsel complained that she had not received a Step I response to a grievance she had filed earlier: "I grieved on 12.18.11 still no [first] step response. . . . I fell off the top bunk! In DC326 upper bunk 12-17-11 I was wheeled to Health Care I grieved because at the time I had a bottom bunk detail . . . . I explained to officer Ratliff about my detail at the time. [Second] time trying to receive my [Step I] grievance response on this issue." (Def.'s Mot. at Pg ID 81.) Thus, it appears that the WHV 0571 grievance, and the December 18, 2011 grievance it references, pertained to Ratliff assigning Townsel a top bunk. No reasonable jury would conclude that the either of these two grievances were about Raupp's conduct. Accordingly, the WHV 0571 grievance (and the referenced December 2011

---

[3]The Court notes that Raupp's evidence suggests that Townsel experienced some difficulty exhausting the WHV 1447 grievance. (*See e.g.*, Def.'s Mot. at Pg ID 77.)

8

grievance), even if properly exhausted, could not have exhausted Townsel's administrative remedies for Raupp's conduct.

It is true that the Grievance Report's reference to a "grievance packet" leaves open the possibility that Townsel submitted a third Step III grievance that could be deemed exhausted. This is because the Report's notation indicates that someone with the initials "BAS" rejected a "B" form—a form prisoners are directed to use to file Step III grievances. In particular, the Report provides, "5-7-12 grievance packet [received] which had 2 A forms, *a B form* and an 'attached' Step I response, none of which had the same grievance ID number on them. Returned to P[risoner] 5-11-12 [with] instructions to resubmit [with] proper documents. . . BAS." (Def.'s Mot., Ex. 3, Step III Grievance Report (emphasis added).) And MDOC's grievance policy directive provides that the "CSJ-247B form" is to be used at Step II and at Step III. (*See* PD 03.02.130 ¶¶ BB, FF.) The Report's notation does not resolve this ambiguity. And if the grievance packet did contain a Step III grievance, it is not apparent why "BAS" rejected it. (*See* PD 03.02.130 ¶ FF ("To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form (CSJ-247B), to the Grievance and Appeals Section . . . .").) An improper rejection of a grievance can be a basis for deeming that grievance exhausted. *See LaFountain v. Martin*, 334 F. App'x 738, 741 (6th Cir. 2009).

Still, the Court believes that Raupp has carried her summary-judgment burden on non-exhaustion. While it is possible that the "grievance packet" contained a completed Step III grievance, nothing suggests that this was probable. And even assuming a reasonable jury could conclude otherwise, nothing suggests that the supposed Step III grievance was about Raupp's conduct. To the contrary: Townsel herself provides that she "signed off" on her grievance against

9

Raupp for Raupp's failure to move Townsel to a bottom bunk. (Compl. at Pg ID 6.) This is consistent with the undisputed evidence that, within a matter of days of Raupp initially placing Townsel in a top bunk, Townsel was moved to a bottom bunk. Her subsequent removal to a top bunk and injury-producing fall did not involve Raupp. Given the inference-upon-inference—with neither being particularly strong—it would be speculative to conclude that the "grievance packet" exhausted Townsel's claims against Raupp. To be sure, Raupp's summary-judgment burden requires her to establish beyond a preponderance that Townsel has not exhausted her claims against Raupp. *Cockrel*, 270 F.3d at 1056. But this does not mean that Raupp must eliminate every possibility—however remote—that Townsel did so.

Finally, the Court notes that it appears Townsel filed other grievances. (Def.'s Mot. at Pg ID 82.) But it also appears that these were not properly exhausted. Townsel wrote, "I have several other[] [grievances], which were rejected because I made the mistake of writing them on the same grieve form." (Def.'s Mot. at Pg ID 82.) In accord with this statement, MDOC's grievance policy directive provides that a grievance may be rejected if it "contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant." (PD 03.02.130 ¶ G1.) Moreover, nothing suggests these grievances were against Raupp.

In short, Raupp has shown that no reasonable jury could find that Townsel has exhausted her administrative remedies for Raupp's conduct.

**B.**

Alternatively, Raupp is entitled to summary judgment on the basis of qualified immunity.

A defendant "'enjoys qualified immunity . . . unless the facts alleged and evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that:

(1) the defendant violated a constitutional right; and (2) the right was clearly established.'" *Jefferson v. Lewis*, 594 F.3d 454, 459 (6th Cir. 2010) (quoting *Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)). It is within a court's discretion to address either prong first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). On a motion for summary judgment, "Defendants bear the initial burden of coming forward with facts to suggest that they were acting within the scope of their discretionary authority during the incident in question." *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992). "Thereafter, the burden shifts to the plaintiff to establish that the defendants' conduct violated a right so clearly established that any official in defendants' positions would have clearly understood that they were under an affirmative duty to refrain from such conduct." *Id.*

Townsel says Raupp violated the Eighth Amendment. The Eighth Amendment, incorporated against the States by the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend VIII. Eighth Amendment claims have an "objective component" (i.e., "was the deprivation sufficiently serious?") and a "subjective component" (i.e., "did the officials act with a sufficiently culpable state of mind?"). *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). To satisfy the subjective component, the record must permit a jury to find that Raupp knew of, yet chose to disregard, an excessive risk to Townsel's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

On the record before the Court, a reasonable jury could not conclude that Raupp violated Townsel's Eighth Amendment rights. Under Townsel's account, Raupp knew of Townsel's bottom-bunk detail as of November 29, 2011. (Compl. at Pg ID 3.) And, the Court will assume for purposes of argument that a reasonable jury would infer that Raupp, with knowledge of the medical detail,

11

understood that there was a substantial risk that Townsel would suffer serious injury if her detail was not honored. The problem for Townsel, however, is that a reasonable jury could not infer that Raupp consciously disregarded that risk. *See Farmer*, 511 U.S. at 839.

Townsel says, "Raupp did not honor [my] medical detail as she did not move me from the top bunk to a bottom bunk on November 29, 2011." (Compl. at Pg ID 3.) But Townsel's own evidence strongly suggests that Raupp did not have independent authority to do so. Townsel says that, in attempting to resolve a grievance she filed against Raupp, RUM Frodyma told her that "Raupp entered [Townsel's] detail for a bottom bunk in the system on November 30, 2011" (the day after Townsel received the medical detail). (Compl. at Pg ID 6.) Townsel then cites RUM Frodyma's response to Townsel's grievance against Raupp. (*Id.*) It says, "Prisoner Townsel has alleged that she reported to A/ARUS Raupp on 11/29/11 that she had received a bottom bunk detail and that A/ARUS did not honor it. . . . On 11/30/11 I received a request from A/ARUS Raupp to have prisoner Townsel moved to a bottom bunk. Prisoner Townsel currently locks in a bottom bunk . . . ." (Compl., Ex. B.) From this evidence, it would be unreasonable to infer that Raupp chose to disregard a substantial risk to Townsel's safety; the ready inference is that the day after Raupp was informed of the detail, she acted to reduce Townsel's risk of injury by filing a bottom-bunk request with Townsel's resident unit manager.[4]

---

[4]Townsel's other allegation about Raupp does not justify altering this conclusion. Townsel says, "On December 22, 2011, A/ARUS Raupp[] moved me back to DB 32D (lower level, lower bunk) due to my no stairs detail. The detail was due to it being hard for me to breathe." (Compl. at Pg ID 7.) Read in isolation, this assertion does suggest that Raupp had independent authority to move Townsel to a bottom bunk based on a medical detail. But this move by Raupp was after RUM Frodyma had concluded that Townsel should not have been on a top bunk. Townsel says that, on December 20, 2011, "I informed RUM Frodyma that I still had not been moved." (Compl. at Pg ID 6.) But sometime that day, Frodyma signed a grievance response providing that "[t]he medical detail of prisoner Townsel have been [*sic*] honored, she now locks in a bottom bunk." (Compl., Ex. B.)

12

Raupp's account of what occurred differs from Townsel's. But it is consistent in one important respect: that Raupp acted with diligence in seeking approval from RUM Frodyma for Townsel to move to a bottom bunk. It appears that Raupp does not recall Townsel speaking with her about the bottom-bunk detail on November 29, 2011. (*See* Def.'s Mot. for Summ. J., Ex. 1, Raupp Aff. ¶ 3.) And Raupp says that human resources has indicated that she was "off duty" on November 30, 2011. (Raupp Aff. ¶ 4.) Although this is inconsistent with Raupp having entered Townsel's bottom-bunk detail into the system on November 30 (as Frodyma allegedly told Townsel), that conflict does not require a jury's resolution. This is because even if Raupp did not enter the detail on November 30, nothing suggests that she did not act with diligence in doing so as soon as she became aware of the detail. To the contrary, Raupp avers, "On Thursday, December 1, 2011, if I would have received the detail in the mail[5] or the inmate would have shown it to me . . . . I would have put her on 'move slip' and sent it to my Resident Unit Manger (RUM), who was RUM Frodyma, for approval." (Raupp Aff. ¶ 4.) Raupp also avers, "I was off on Sick Leave on Friday, December 2, 2011. Therefore, I might not have received/saw the detail until Monday, December 5, 2011, and would have then entered a Move Slip. Again, it would have to be sent to my supervisor, RUM Frodyma." (Raupp Aff. ¶ 5.) Townsel offers nothing to contradict these two assertions.

---

Also on December 20, Frodyma told Townsel "that [she] should not have been on the top bunk, period!" (Compl. at Pg ID 7.) In other words, while Townsel may not have moved to a bottom bunk as of December 20, Frodyma had approved that move by that date. Therefore, Townsel's assertion that Raupp moved her on December 22, 2011 does not show that Raupp had the authority to do so without Frodyma's prior approval.

[5]Raupp avers, "[N]ormally, when a detail is entered by a doctor, it will be printed and go into the mail for the inmate and ARUS." (Raupp Aff. ¶ 3.)

13

In sum, the record as it stands strongly implies that Raupp needed approval from her supervisor, RUM Frodyma, before moving Townsel to a bottom bunk. Townsel offers nothing to the contrary. Further, the record implies that Raupp acted with diligence in seeking that approval from Frodyma. Townsel does not allege otherwise. A reasonable jury, therefore, could not conclude that Raupp chose to disregard a substantial risk to Townsel's health or safety. As such, Raupp has shown that no reasonable jury could find that she violated Townsel's Eighth Amendment rights.[6]

## IV.

For the foregoing reasons, the Court believes that Raupp has shown that no reasonable jury could find that Townsel exhausted her administrative remedies for Raupp's alleged misconduct as alleged in this suit. And even assuming otherwise, any reasonable jury considering Townsel's testimony about Raupp's conduct as pled in the Complaint would not conclude that Raupp consciously disregarded a substantial risk of serious harm to Townsel. This Court therefore RECOMMENDS that Raupp's Motion for Summary Judgment (Dkt. 9) be GRANTED.

## V.

The parties to this action may object to and seek review of this Report and Recommendation by the district judge within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that

---

[6]As noted, Townsel has also alleged that "defendants" should be liable for violating Michigan Department of Corrections Policies and Operating Procedures and/or Michigan Compiled Laws § 791.206. (Compl. at Pg ID 3.) It appears, however, that the "defendants" whom Townsel refers are those who allegedly failed to provide adequate medical care. (*See* Compl. at Pg ID 13-14 (referencing "Huron Valley Correctional Facility health care staff").)

14

making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                      s/Laurie J. Michelson
                                      LAURIE J. MICHELSON
                                      UNITED STATES MAGISTRATE JUDGE

Dated: November 27, 2013

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on November 27, 2013.

                                      s/Jane Johnson
                                      Deputy Clerk